17-1759-cr(L)
*United States v. Cosme*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of July, two thousand twenty-one.

PRESENT:  PIERRE N. LEVAL,
　　　　　JOSÉ A. CABRANES,
　　　　　WILLIAM J. NARDINI,
　　　　　　　　　*Circuit Judges.*

---

UNITED STATES OF AMERICA,

　　　　　　　　　*Appellee,*　　　　　　　　17-1759-cr(L)
　　　　　v.　　　　　　　　　　　　　　　 17-1785-cr(Con)
　　　　　　　　　　　　　　　　　　　　　 17-1910-cr(Con)
　　　　　　　　　　　　　　　　　　　　　 17-2321-cr(Con)

WILLIAM R. COSME, AKA WILLIAM R. COSMO, AKA
　　　SEALED DEFENDANT 1,

　　　　　　　　　*Defendant-Appellant.*

---

**FOR DEFENDANT-APPELLANT:**　　　　William R. Cosme, *Pro Se*, Minersville, PA
　　　　　　　　　　　　　　　　　　　Harry Sandick and George B. Fleming,

Patterson Belknap Webb & Tyler LLP, New York, NY, *on the brief.*

**FOR APPELLEE:**                    Noah Solowiejczyk, Martin S. Bell, and Won S. Shin, Assistant United States Attorneys, *for* Audrey Strauss, United States Attorney, Southern District of New York, New York, NY.

Appeal from a judgment entered July 17, 2017 by the United States District Court for the Southern District of New York (Loretta A. Preska, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and hereby is **AFFIRMED** in part and **REMANDED** in part.

In 2012 Defendant-Appellant William Cosme was arrested at his home, during which the Government seized money and property. In a superseding indictment filed in February 2017, Cosme was charged with wire fraud and aggravated identity theft. He proceeded to trial. After a jury returned a verdict of guilty as to both counts, the District Court sentenced Cosme principally to a term of 111 months of imprisonment. Before the trial began, the District Court determined that Cosme had forfeited the right to represent himself and appointed counsel pursuant to the Criminal Justice Act ("CJA"). Throughout the proceedings below, as well as on this appeal, Cosme has been represented by more than fourteen different attorneys.[1] On appeal, Cosme challenges his conviction, sentence, and the seizure of his assets. We assume the parties' familiarity with the underlying facts and prior record of proceedings, to which we refer only as necessary to explain our decision.

## I.      *Aggravated Identity Theft*

Cosme first challenges the aggravated identity theft count, in violation of 18 U.S.C. § 1028A ("Section 1028A"), on the basis that the superseding indictment was untimely. We review a district

---

[1] After Cosme's counsel filed a merits brief in this appeal, they filed a motion to withdraw as CJA counsel, Doc. 208 (17-1759-cr(L)), which was granted, Doc. 214 (17-1759-cr(L)); despite the subsequent appointment of two additional CJA counsel—both of whom also moved to be relieved of service—Cosme now proceeds *pro se.*

court's denial of a motion to dismiss an indictment *de novo*.[2] We also review a district court's application of a statute of limitations *de novo*.[3]

The Government urges that Cosme forfeited, or even waived, this argument. Our review of the record shows that, at the final pretrial conference in February 2017, Cosme, proceeding *pro se*, moved orally to dismiss the aggravated identity theft count (Count Two) as untimely. The District Court denied Cosme's motion. Accordingly, to the extent Cosme challenges the pretrial dismissal of Count Two based on the statute of limitations, looking at the face of the superseding indictment, his claim is preserved. It is well established that "[s]tatutes of limitations normally begin to run when the crime is complete."[4] The time at which a crime is "complete" depends largely on the nature of the crime.[5] A person commits aggravated identity theft when he, "during and in relation to any felony violation . . . [,] knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person[.]"[6] Here, as the basis for the aggravated identity theft count (Count Two), the superseding indictment charged Cosme with using the names of real persons without lawful authority during and in relation to wire fraud (Count One) from at least 2010 through at least December 2012.[7] Because the superseding indictment charged Cosme with conduct continuing through at least December 2012, and because the superseding indictment was returned in February 2017, the aggravated identity theft count was not time-barred.[8] We thus conclude that the District

[2] *United States v. Canori*, 737 F.3d 181, 182 (2d Cir. 2013).

[3] *See, e.g.*, *United States v. Sampson*, 898 F.3d 270, 278 (2d Cir. 2018)

[4] *Toussie v. United States*, 397 U.S. 112, 115 (1970) (internal quotation marks and alterations omitted).

[5] *United States v. Eppolito*, 543 F.3d 25, 46–47 (2d Cir. 2008).

[6] 18 U.S.C. § 1028A(a)(1).

[7] In connection with Count One (wire fraud), the superseding indictment charged Cosme with engaging in a scheme or artifice to defraud the victim school from at least 2010 through at least December 2012. As part of the scheme, Cosme "represented and agreed that [he] would invest for the benefit of the [victim school] the entirety of the Equity Deposit provided to [him]" but instead, Cosme "misappropriated substantial portions of these funds to make purchases for his own personal benefit." App'x 418.

[8] The Government and then-counsel for Cosme appear to make no argument as to why the standard five-year statute of limitations under 28 U.S.C. § 3282 should not apply to Section 1028A. But the Government and then-counsel for Cosme appear to suggest—relying on cases involving other statutory contexts and as well as cases involving venue—that the timeliness of a Section 1028A count is determined by looking at the predicate offense, a question that has not yet been definitively addressed by this Court. *Cf. United States v. Magassouba*, 619 F.3d 202, 203 (2d Cir. 2010) (in a case involving venue and Section 1028A, holding "where (as here) venue is appropriate for the predicate felony offense, so too is venue appropriate for a prosecution of the separate crime of knowingly transferring, possessing, or using a means of identification of another person 'during and in relation to' that offense."); *United States v. Payne*, 591 F.3d 46, 69 (2d Cir. 2010) (in another statutory context, but for purposes of statute of limitations, holding that "[w]hen a defendant is convicted of violating § 924(c)(1)(A) for using or carrying a firearm during and in relation to a crime that is a continuing offense, the § 924(c)(1) crime itself is a continuing offense."); *see also United States v. Wilson*, 2011 WL 5121098, at *2 (S.D.N.Y. 2011) (determining that because "the [District] Court is aware of no case that addresses the limitations period for aggravated identity theft," the law does not "'expressly

Court did not err in denying Cosme's pretrial motion to dismiss the Section 1028A count, based on the face of the superseding indictment.

By contrast, Cosme failed to raise any limitations-based challenge to his conviction for aggravated identity theft after the conclusion of evidence, for example, through a motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29.[9] To the extent Cosme makes this argument on appeal, his claim that the evidence did not support a conclusion that he committed the offense within the limitations period is reviewable only for plain error.[10] Again, we have not yet definitively addressed whether the timeliness of a Section 1028A count is determined by looking at the predicate offense.[11] The absence of any governing authority from the Supreme Court or this Court on this question dictates that any error (if there was error) could not be "plain" within the meaning of Fed. R. Crim. P. 52(b).[12] That alone would defeat any challenge raised by Cosme to his Section 1028A conviction on this basis on appeal.[13]

Next, Cosme challenges the sufficiency of the superseding indictment as to the charge of aggravated identity theft. We review challenges to the sufficiency of the indictment *de novo*.[14]

---

provide[ ]' for a limitations period beyond that set forth in Section 3282(a), and that the applicable limitations period for a violation of Section 1028A is five years"), *aff'd on other grounds*, 512 F. App'x 75 (2d Cir. 2013) (non-published summary order).

    In the circumstances of Cosme's timeliness challenge to the Section 1028A count in the superseding indictment, however, this distinction has no effect on the outcome. Here, because the conduct underlying the charges of aggravated identity theft and wire fraud—which is, in turn, the predicate offense for Section 1028A—covers the same time period, a scheme to defraud in which Cosme was engaged from at least 2010 to at least December 2012. Accordingly, the aggravated identity theft count with which Cosme was charged in the superseding indictment fell within the five-year statute of limitations.

    [9] *United States v. Pizzonia*, 577 F.3d 455, 462 (2d Cir. 2009) (reviewing *de novo* sufficiency of evidence that offense occurred within limitations period).

    [10] *United States v. Olano*, 507 U.S. 725, 732 (1993).

    [11] *See* Note 8, *supra*.

    [12] *Olano*, 507 U.S. at 734 ("At a minimum, [a] court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law.").

    [13] To the extent that Cosme challenges his Section 1028A conviction on the basis that the evidence presented at trial did not show that he committed the offense within the applicable limitations period, whether the limitations period for Section 1028A is determined by looking at the predicate offense would again have no effect on the outcome in Cosme's case. Here, the conduct underlying the aggravated identity theft conviction (that is, the use of the another's name) and the wire fraud conviction (which is, in turn, the predicate offense for the Section 1028A count) covers the same time period: a scheme to defraud in which Cosme was engaged until at least December 2012. Accordingly, the evidence presented at trial showed that Cosme committed the conduct underlying the aggravated identity theft count within the five-year statute of limitations.

    [14] *United States v. Agrawal*, 726 F.3d 235, 242 (2d Cir. 2013).

We have held that "[t]ypically, to state an offense, an indictment need only track the language of the statute and, if necessary to apprise the defendant of the nature of the accusation against him, state time and place in approximate terms."[15] Here, the superseding indictment tracked the language of the statute, identified the predicate felony, and gave Cosme notice of the allegations against him.[16] Accordingly, we conclude the superseding indictment sufficiently alleged the elements of aggravated identity theft.

## II.  Seizure of Assets

Cosme contends that his assets were erroneously seized by the Government.[17] We review the district court's determination of probable cause *de novo*.[18]

Cosme first takes the position that the Government lacked probable cause for seizure because the loan agreement between Cosme and the victim school permitted him to do anything he wished with the deposited money. Thus, in Cosme's view, he committed no crime that could taint the assets seized by the Government. But Cosme's challenge on this basis is unavailing. Indeed, this argument goes to whether there was probable cause to support the indictment for wire fraud. And the Supreme Court has made clear that "[a] defendant has no right to judicial review of a grand jury's determination of probable cause to think a defendant committed a crime."[19]

---

[15] *United States v, Frias*, 521 F.3d 229, 235 (2d Cir. 2008) (internal quotation marks omitted).

[16] The superseding indictment charged that Cosme "knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony . . . to wit, in causing [the victim, an international school located in South Korea,] to be provided with false information about the officers of [Cosmo Dabi International Trading Group, Cosme's company], without lawful authority, [Cosme] used, and aided and abetted the use of, the names of real persons during and in relation to the felony violation changed in Count One of this indictment [wire fraud]." ROA 309 at 9.

[17] Cosme argues first that the Government failed to comply with the statutory 90-day deadline to commence civil forfeiture proceedings. *See* 18 U.S.C. § 983(a)(3)(A)-(B) (the Government must commence civil forfeiture proceedings within 90 days or "obtain a criminal indictment containing an allegation that the property is subject to forfeiture" within the 90-day period and "take the steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute"). Although the Government originally sought civil forfeiture of Cosme's assets, the Government subsequently elected to proceed under the criminal forfeiture statutes in order to restrain the assets before trial. *United States v. Cosme*, 796 F.3d 226, 233–36 (2d Cir. 2015) ("*Cosme I*"). In *Cosme I*, we concluded that the Government was permitted to switch from pursuing civil forfeiture to criminal forfeiture, but we remanded for the District Court to determine whether the Government had probable cause to seize the assets based on criminal activity. *Id.* at 233–36. Accordingly, that the Government did not meet the 90-day civil forfeiture deadline does not affect the validity of its proceeding under the criminal forfeiture statutes.

[18] *Cosme I*, 796 F.3d at 233.

[19] *Kaley v. United States*, 571 U.S. 320, 333 (2014). Further, that Cosme has now been found guilty of both charges contained in the superseding indictment cures any asserted error in the grand jury's decision to charge him with wire fraud. *See United States v. Mechanik*, 475 U.S. 66, 73 (1986) ("[T]he petit jury's verdict

Cosme next argues that the Government erroneously seized two vehicles—a Cadillac Escalade and a Lamborghini—because the funds used to purchase the cars were not traceable to any illicit proceeds. We do not agree. "To satisfy the probable cause requirement, the Government must have reasonable grounds to believe that certain property is subject to forfeiture," and those grounds "must rise above the level of mere suspicion but need not amount to what has been termed prima facie proof."[20] We have explained that "[w]hen some funds in a seized bank account are traceable to criminal activity and some are not," a court has several "'accounting choices' at [its] disposal to determine what amount of commingled funds are traceable to criminal activity,"[21] such as "the 'drugs-in, last-out'" approach or the "'drugs-in, first-out'" approach.[22]

Here, the District Court did not erroneously conclude that the Government established probable cause to seize the two vehicles. The Government filed an affidavit by Federal Bureau of Investigation Agent Redel, in which Agent Redel indicated that $5.1 million (of the $5.5 million that the victim school transferred to Cosmo Dabi International Trading Group) had been transferred to a second Cosmo Dabi account, which had a prior balance of approximately $371,600, in February 2011. From that second account, Cosme wrote checks to purchase a Cadillac Escalade and a Lamborghini for approximately $47,000 and $314,000 respectively. Under the "drugs-in, first-out" accounting method, when an account has commingled funds, any withdrawal up to the amount of the illicit proceeds deposited in that account—in this case, $5.1 million— is considered traceable to those illicit proceeds.[23] Therefore, the funds Cosme withdrew from the account with commingled funds to purchase the vehicles were traceable to the original $5.5 million Cosme received from the victim school.

In sum, we conclude that the seizure of Cosme's assets was supported by probable cause.

### III.   Sixth Amendment

Cosme next asserts that his Sixth Amendment right to represent himself was violated. Where a litigant has voluntarily and intelligently waived his right to counsel and elects to proceed *pro se*, we

---

rendered harmless any conceivable error in the charging decision that might have flowed from the violation [in the grand jury proceedings.]").

[20] *United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1160 (2d Cir. 1986) (internal quotation marks omitted).

[21] *United States v. Walsh*, 712 F.3d 119, 124 (2d Cir. 2013).

[22] *Banco Cafetero Panama*, 797 F.2d at 1159. Under the first approach, "[i]f $100 from a drug sale is deposited into an active account," the contents of the account are considered "to be 'traceable proceeds' to the extent of $100 as long as the account balance never falls below that sum." *Id.* Under the second approach, the "traceable proceeds" are considered "to be any one withdrawal, or any asset purchased with such withdrawal, to the extent of $100." *Id.*

[23] *Banco Cafetero Panama*, 797 F.2d at 1159–60.

review a district court's decision to grant or deny a *pro se* litigant's request for counsel for abuse of discretion.[24]

It is well established that a criminal defendant has a Sixth Amendment right to forgo counsel and represent himself under the Sixth Amendment to the United States Constitution.[25] However, we have held that a defendant's right to represent himself in the first place is not absolute.[26] Further, "[a] defendant has no right to engag[e] in serious and obstructionist misconduct, and a court may deny a defendant's request to proceed *pro se* if it finds that the request is manipulative or abusive in some other way."[27]

Cosme asserts the District Court denied him a full opportunity in the proceedings below to consider whether he wished to represent himself. We do not agree. "[W]here, as here, the court has already replaced counsel more than once, and the case approaches trial, it is reasonable for the court to require an intractable defendant either to proceed with the current appointed lawyer, or to proceed *pro se*."[28] The district court should make the defendant "aware of the dangers and disadvantages of self-representation" and "establish that the defendant underst[ands] he ha[s] a choice between proceeding *pro se* [or] with assigned counsel"; "underst[ands] the advantages of having one trained in the law to represent him"; and "ha[s] the capacity to make an intelligent choice."[29]

Here, the District Court gave Cosme a full opportunity to consider whether he wished to proceed *pro se*. In the proceedings below, Cosme was represented by more than eight attorneys. Beginning as early as 2014, the District Court informed Cosme of the risks of proceeding *pro se* and the advantages of having counsel, including at several pretrial conferences.[30] We conclude that the

---

[24] *United States v. Kerr*, 752 F.3d 206, 221 (2d Cir. 2014).

[25] *See Faretta v. California*, 422 U.S. 806, 819 (1975).

[26] *Kerr*, 752 F.3d at 220; *United States v. Barnes*, 693 F.3d 261, 271 (2d Cir. 2012). For example, we have recognized that "when a defendant who elected to proceed pro se later demands an attorney, there is broad consensus that, once waived, the right to counsel is no longer unqualified." *Kerr*, 752 F.2d at 220.

[27] *Barnes*, 693 F.3d at 271 (internal quotation marks and citations omitted).

[28] *United States v. Culbertson*, 670 F.3d 183, 193 (2d Cir. 2012). The district court should "strive for a full and calm discussion with the defendant in order to satisfy itself that he has the requisite capacity to understand and sufficient knowledge to make a rational choice." *Id.* (internal quotation marks omitted).

[29] *Id.*

[30] At pretrial conferences, the District Court urged Cosme to accept counsel because of the complexity of the case and explained that it had appointed Mark DeMarco as standby counsel. In addition to these conferences, the District Court gave Cosme multiple opportunities immediately before trial to choose whether to proceed *pro se* and reiterated that Cosme could have Attorney DeMarco represent him if he so chose.

District Court more than adequately discharged its duty to ensure that Cosme was fully informed about his representation choices.[31]

Cosme further takes issue with the District Court's stated reasons for denying him the right to represent himself, including that Cosme refused to participate in proceedings as a *pro se* litigant and that Cosme continued to behave inappropriately. But we agree with the District Court's assessment of the situation. It is true that Cosme did argue several points himself. But when the District Court asked Cosme whether he wanted to proceed *pro se* before the jury or have standby counsel Attorney DeMarco proceed, Cosme repeatedly refused to answer the District Court.[32] Cosme also raised at least one objection himself to Attorney DeMarco's representation in front of the jury, after which the District Court cautioned him not to disrupt the proceedings or risk being removed from the proceedings. And Cosme acknowledges on appeal that he repeatedly raised the same legal issues before the District Court, even though those issues had already been discussed and ruled on.

In these circumstances, we cannot conclude that the District Court abused its discretion in appointing counsel to represent Cosme.

## IV.    Sentence

Cosme urges a remand for resentencing on the basis that the District Court erred by applying a sentencing enhancement that was not in effect at the time he committed his offense, which yielded a higher advisory sentence under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") than what would have applied under the Guidelines in effect at the time of his offense conduct.[33]

"Although district courts ordinarily apply the Guidelines version in effect at the time of sentencing, constitutional ex post facto concerns dictate making an exception to the ordinary practice when the version in effect at sentencing gives rise to a higher sentence than does the version in effect at the time of the offense."[34] Under an amendment to the Guidelines that became effective in November 2015, a two-level enhancement was created for offenses that "resulted in substantial

---

[31] *See Culbertson*, 670 F.3d at 193.

[32] Instead, Cosme continually insisted that he only wanted his "retained counsel," an attorney from Pryor Cashman, LLP, even though the District Court explained that no attorney from Pryor Cashman was present or representing him in the proceedings and his only options were that DeMarco represent him or that he represent himself.

[33] *See* U.S.S.G. § 2B1.1(b)(2)(A)(iii).

[34] *United States v. Guerrero*, 910 F.3d 72, 75 (2d Cir. 2018) (citing *Peugh v. United States*, 569 U.S. 530, 549 (2013)).

financial hardship to one or more victims[.]"[35] The District Court concluded that this two-level enhancement applied to Cosme. As a result, the Guidelines range applicable to Cosme increased, from 70 to 87 months of imprisonment to 87 to 108 months of imprisonment. *See* U.S.S.G. § 5A.

Accordingly, and with the consent of the Government, we remand for resentencing.

## **CONCLUSION**

We have reviewed all other arguments raised by Cosme on appeal and find them to be without merit. For the foregoing reasons, Cosme's motion to vacate his conviction and to release his seized assets is **DENIED**, Doc. 401 (17-1759-cr(L)). The following other pending motions are also **DENIED**: Doc. 210 (17-1785-cr(Con)); Doc. 219 (17-1785-cr(Con)); Doc. 305 (17-1785-cr(Con)); Doc. 207 (17-1910-cr(Con)); Doc. 216 (17-1910-cr(Con)); Doc. 302 (17-1910-cr(Con)); Doc. 209 (17-2321-cr(Con)); Doc. 295 (17-2321-cr(Con)). We **REMAND** for resentencing but we otherwise **AFFIRM** the judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[35] U.S.S.G. Supp. to App'x C, amend. 792.